Sumner E. FLASH, Appellant,

v.

Jesse BROWN, Secretary of Veterans
Affairs, Appellee.

No. 94–0206.

United States Court of Veterans Appeals.

Oct. 10, 1995.

Before FARLEY, MANKIN, and STEINBERG, Judges.

## ORDER

334

Marna F. Berkman and Mitchell Garabedian, Boston, MA, were on the brief for appellant.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; Adrienne Koerber, Deputy Assistant General Counsel; and Amy S. Gordon, Washington, DC, were on the brief for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and STEINBERG, Judges.

STEINBERG, Judge, filed the opinion of the Court. NEBEKER, Chief Judge, filed a concurring opinion.

STEINBERG, Judge:

The appellant, veteran Sumner E. Flash, appeals a December 23, 1993, decision of the Board of Veterans' Appeals (BVA or Board) denying (1) service connection for bilateral hearing loss and (2) an earlier effective date for an increased rating for a right-eye disability. Record (R.) at 10. For the reasons that follow, the Court will dismiss the appeal as to the claim for an earlier effective date, and will vacate the Board decision as to the claim for service connection for hearing loss and remand the matter.

## I. Background

The veteran served in the U.S. Army from July 1955 to May 1957. R. at 200. A July 1955 induction medical examination report revealed no pertinent abnormalities, and indicated that his whispered-voice hearing test results were 15/15. R. at 28–29. Service medical records (SMRs) show that in October 1956 he was seriously injured when a shell exploded near him during a training exercise in Germany. R. at 42. He sustained a partial traumatic amputation of the right hand (four fingers apparently, *see* R. at 217) and a penetrating wound to the right eye with a retained foreign body. R. at 36. The injury resulted in blindness of the right eye except for light perception. R. at 147, 157. In November 1956, the right eye was described as "white". R. at 117. A November 1956 SMR noted "no loss [of] hearing—tinnitus on occasion in recent weeks" (R. at 104), and an audiogram was normal (R. at 112). An SMR progress note stated: "Patient complains of strange feeling in right ear. Exam by Dr. Foster reveals no abnormality. Hearing is apparently not affected." R. at 112. An April 1957 separation medical examination SMR reported his whispered-voice hearing test results as 15/15. R. at 186. He was separated from service in May 1957 due to disability. R. at 194.

In June 1957, the veteran filed with a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) an application for compensation or pension.

R. at 202. A VARO decision later that month awarded service connection for right-hand wound residuals, rated 50% disabling, and aphakia of the right eye, rated 30% disabling, with a combined rating of 70% effective from May 1957. R. at 207. ("Aphakia" is the absence of the lens of the eye. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 110 (27th ed. 1988).) He was also awarded special monthly compensation for loss of use of the right eye and right hand. R. at 207, 210. This decision was not appealed to the Board and became final. *See* R. at 411. An August 1958 VA examination report indicated a "traumatic cataract" in the right eye and noted that the "lens substance [was] opaque." R. at 215, 217.

In August 1983, the veteran wrote to the RO that he had been "recently experiencing ... a noticeable ... hearing impairment". R. at 225. He submitted a notarized statement from a person who had supervised him at work from 1963 to 1966, averring that he knew the veteran had suffered from a hearing problem because he had "had to repeat commands or conversations to him." R. at 230. The veteran also submitted a June 1984 letter from Dr. David Bailen, stating that he had been the veteran's physician for "a number of years" and that "[p]ast history reveals that after an explosion which occurred in 1956, [the veteran] has had a constant ringing and hearing loss of the right ear." R. at 233. A June 1984 VA hearing examination report recorded mild sensorineural hearing loss in the left ear and "moderate-severe mixed loss" in the right ear, with "discrimination excellent" in both ears. R. at 237–38.

A December 1984 RO decision continued the veteran's 70% combined rating and denied service connection for hearing loss, tinnitus, and unemployability. R. at 241–42. R. at 241. The veteran appealed to the BVA. R. at 244, 252. He submitted a May 1985 letter from Dr. Clubb, stating that he had first seen the veteran in May 1985 for complaints of tinnitus and hearing loss and reporting the following pure-tone audiometric results:

| Hz. | 500 | 1000 | 2000 | 4000 |
|---|---|---|---|---|
| Right ear | 15 | 40 | 60 | 30 |
| Left ear | 25 | 35 | 55 | 35 |

R. at 254. Dr. Clubb noted that "a traumatic acoustic notch" was present in both ears; that speech discrimination was 88% in both ears; and that the Lombard malingering test indicated that the veteran's responses were reliable. R. at 255–56. He stated:

In my medical opinion, there is a direct causal relationship between your bilateral deafness (mixed on right, sen[s]orineural on left) with associated tinnitus[ ] (right ear, and head) and between [sic] the maiming blast from the exploding 40 mm shell while on active military service, 10–13–56. The reasons for my medical opinion are:

1) there is a documented blast injury, resulting in acute acoustic trauma and fragmented[-]shell injuries to the face and head.

2) the above[-]noted symptoms are generally associated with blast type of injuries.

3) 65% of all acoustic trauma results in sensorineural deafness, and tinnitus.

4) [an] additional 35% of all patients with tinnitus, have this symptom resulting from an explosive type [o]f injury.

5) audiometry demonstrates the typical high tone acoustic notch which is pathoneumonic [sic] of acoustic trauma. (This is present in your case.)

6) the frequency of tinnitus is measured at 750 CPS and requires a noise loud[ne]ss of 70 Db to demonstrate residual inhibition, of this ringing noise in your right ear.

7) it is my suspicion that the mixed deafness of your right ear, relates to disarticulation of the ossicular chain, resulting from positive and negative pressures from the blast injury on 10–13–56. This can be easily verified by taking Tomograms of the right middle ear, exploring the possibilities of the disarticulation of the ossicular chain. If this turns out to be true, then it is recommended that you undergo a right exploratory tympanotomy and investi[g]ate the right middle[-]ear space, and whatever problems that may exist there, thereby improving and restoring lost hearing.

. . . .

My final diagnosis is:

1) mixed deafness, moderate to severe in the right ear, with tinnitus, resulting from the blast injury.

2) sensorineural deafness of a moderate to severe degree, secondary to blast injury.

3) tinnitus secondary to a[co]ustic trauma from the blast injury.

4) ? of ossicular chain disarticulation in right ear, secondary to blast injury.

R. at 256–57.

In July 1985, the RO again denied service connection for hearing loss and tinnitus. R. at 275. The BVA, in January 1986, denied service connection for a hearing loss on the grounds that no hearing problem was diagnosed in service and that the first complaint of tinnitus and the first diagnosis of defective hearing was in 1984, 27 years after separation from service. R. at 285–86. A June 1987 letter from Dr. Clubb indicated that he had reviewed the veteran's in-service audiometric examination and had concluded that "tinnitus if it is present can be misinterpreted by the individual being tested as hearing the frequency being presented to the patient." R. at 298.

A September 1987 BVA decision awarded a 30% rating for post-traumatic stress disorder (PTSD). R. at 308–09. The veteran's rating for disability of the right hand was also increased at some point from 50% to 60%. *See* R. at 242, 314. These increases apparently raised the veteran's combined rating to 80%. An October 1987 letter from Dr. Lessell, an ophthalmologist, stated:

[T]here is a readily apparent abnormality of the anterior segment of the right eye that creates an obvious cosmetic blemish because of tears in the iris, the presence of cataract[,] and [the] growth of conjunctival "white" tissue over the surface of the cornea.

A second significant cosmetic blemish pertains to the position of the right eye. The right eye is abnormally elevated and turned in.

R. at 311.

In March 1988, the RO increased the veteran's right-eye disability rating to 40% to

include "disfigurement of right eye", with an effective date of November 1987, the date of the claim to reopen. R. at 313–14. The veteran asserted that the effective date should be 1957 because the failure to recognize his cosmetic disfigurement in the 1957 RO decision was clear and unmistakable error (CUE). R. at 322–23. A January 1988 letter from Dr. Lessell stated that the cosmetic blemish noted in a 1956 SMR and an August 1958 photograph of the veteran was the same as that described in Dr. Lessell's October 1987 letter. R. at 325; *see* R. at 311, 327. In a May 1989 hearing at the RO, the veteran testified under oath about tinnitus and hearing difficulty. R. at 361. His representative argued that the 1958 VA examination report had indicated that the lens of the right eye was opaque. R. at 367; *see* R. at 215. In a July 1987 decision, the hearing officer determined that the RO had not committed CUE in June 1957 as to the right-eye rating, because it was questionable whether the cosmetic defect was "serious". R. at 377.

In a November 1989 hearing before the BVA, the veteran repeated his contentions in his sworn testimony. R. at 391–402. In a June 1990 decision, the BVA granted service connection for tinnitus and found that there had been no CUE in the June 1957 RO decision as to the right-eye rating because "additional evidence pertaining to the right[-]eye disability was not received ... until November 10, 1987." R. at 412–13. In response to a letter from the veteran about his appeal/reopening options (R. at 420), the RO stated in an August 1990 letter:

> You must file your [Notice of Appeal] with the Court within 120 days of the date of the Board's decision in your case. By reopening your claim, you do not suspend the appeal period to the [Court of Veterans Appeals]. Any adverse decision rendered in your reopened claim may be appealed to the [BVA], and further adverse findings by this Board can then be appealed to [this Court].

> [P]lease understand that under the law, unless you are able to show that a Board decision involved obvious error, the decision by the Board in your case is final. In deciding whether the decision involved obvious error, only the evidence which was of record at the time the decision was made may be considered. If you have any new evidence, I encourage you to reopen your claim at the [RO].

R. at 432.

In September 1990, the veteran's representative submitted to the RO a notice that the veteran wished to "reopen his claim" for an earlier effective date for his 40% right-eye rating. R. at 435. Enclosed was an August 1990 statement from Dr. Bajart, who opined, based on the July 1958 VA examination report and "photographic evidence", that "a serious cosmetic defect was present in July 1958." R. at 436. In a September 1990 decision, the RO determined that the new evidence "warranted no change in BVA determination dated 6–1–90." R. at 442. A November 1990 RO decision awarded a 10% rating for tinnitus, with a combined disability rating of 90%. R. at 444–45.

In March 1991, the veteran submitted to the RO a request for "service connection" for bilateral hearing loss. R. at 452. An attached February 1991 letter from Dr. Silverstein, stated:

> Audiometrics demonstrated a U-shaped curve bilaterally, considerably worse on the right than the left. He, however, was fortunate to have reasonable discrimination scores bilaterally.

> It was my feeling at the time of my initial interview and examination that his hearing loss may well be causally related to this blast injury. I can only imagine that the concussive waves severe enough to produce fragments causing blindness and loss of several fingers could certainly be strong enough to induce tinnitus and subsequent hearing loss.

R. at 453. In September 1991, the RO refused to reopen his claim. R. at 469. The veteran appealed to the BVA. R. at 473, 487. A November 1992 BVA decision determined that new and material evidence had been submitted to reopen the hearing-loss claim, citing the new medical evidence and a change in 38 C.F.R. § 3.385 (1990), and remanded for an audiometric examination and an expert medical opinion. R. at 505–07.

A January 1993 VA medical center examination report stated:

> A mixed loss such as has been noted for the right ear is possible after trauma, but it is probable that some evidence of trauma would have been in evidence after the event, such as on the audiometric test of 1956. It is possible for trauma to precipitate a hearing loss that progresses in severity with time. However, at the outset, it is usual to see some evidence of trauma audiometrically. The audiometric examination of 1956, *presuming its veracity,* was well within the normal range.

R. at 510–11 (emphasis added). The diagnosis as to the external ears was "[s]carring and calcification of the right tympanic membrane, tinnitus[,] and acoustic trauma". R. at 512. In February 1993, the RO denied service connection for bilateral hearing loss. R. at 514.

In the December 23, 1993, BVA decision here on appeal, the Board found that new and material evidence had not been submitted to reopen the veteran's claim for an earlier effective date for his increased right-eye rating. R. at 12. The Board denied service connection for hearing loss, reasoning that although the opinions of Drs. Silverstein and Clubb had "significant probative value", they were "not based upon contemporaneous [SMRs] or records generated soon after separation from service" and that "the veteran's inservice report of no hearing loss and the audiometric record disclosing normal hearing are more probative than medical opinions based upon history as presented by the appellant." R. at 13. A timely appeal to this Court followed.

## II. Analysis

### A. Generally Applicable Law

■ Section 3.105(a) of title 38, Code of Federal Regulations, provides:

> Where evidence establishes [CUE], the prior decision will be reversed or amended. For the purpose of authorizing benefits, the rating or other adjudicative decision which constitutes a reversal of a prior decision on the grounds of [CUE] has the same effect as if the corrected decision had been made on the date of the reversed decision.

38 C.F.R. § 3.105(a) (1994). A claim of CUE is a collateral attack on a final RO decision. *See Smith (William) v. Brown,* 35 F.3d 1516, 1521 (1994); *Duran v. Brown,* 7 Vet.App. 216, 224 (1994). The CUE review authority in 38 C.F.R. § 3.105(a) relates only to review of decisions of the agency of original jurisdiction (ROs) and not to those of the Board. *See Smith,* 35 F.3d at 1527. In *Russell v. Principi,* the Court defined CUE as follows:

> Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied.... [CUE] is the sort of error which, had it not been made, would have manifestly changed the outcome ... [, an error that is] undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed.

*Russell,* 3 Vet.App. 310, 313 (1992) (en banc). "In order for there to be a valid claim of [CUE], ... [t]he claimant, in short, must assert more than a disagreement as to how the facts were weighed or evaluated." *Ibid.*

■ *Russell* also established that, as a threshold matter, a CUE claim cannot be raised for the first time before this Court, but that the claim must have been the subject of a final prior BVA adjudication. *Id.* at 314–15. "A determination that there was a '[CUE]' must be based on the record and the law that existed at the time of the prior ... decision." *Id.* at 314. On appeal of a BVA determination that there was no CUE in a prior final RO decision, the Court's review is limited to determining whether the Board's conclusion is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (38 U.S.C. § 7261(a)(3)(A), and whether it is supported by an adequate statement of "reasons or bases" (38 U.S.C. § 7104(d)(1)). *Russell,* 3 Vet.App. at 315; *see also Damrel v. Brown,* 6 Vet.App. 242, 246 (1994); *Lizaso v. Brown,* 5 Vet.App. 380, 385 (1993).

■ "Once there is a final decision on the issue of [CUE] ... that particular claim of [CUE] may not be raised again." *Russell, supra.* In *Talbert v. Brown,* the Court, cit-

ing *Russell,* held that it was "without juris- diction to review allegations of CUE" in a previous decision when that same allegation of CUE had been denied in a previous, unap- pealed, BVA decision. *Talbert,* 7 Vet.App. 352, 356 (1995); *see also Olson v. Brown,* 5 Vet.App. 430, 433 (1993) (Court, citing *Rus- sell,* stated that because issue of CUE had been previously decided by the Board, it was not before the Court); *Schmidt v. Brown,* 5 Vet.App. 27, 29–30 (1993).

■■■ The Secretary must reopen a pre- viously and finally disallowed claim when "new and material evidence" is presented or secured with respect to the basis for the denial of that claim. *See* 38 U.S.C. §§ 5108, 7104(b). On a claim to reopen a previously and finally disallowed claim, the BVA must conduct a "two-step analysis" under section 5108. *Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is new and material "when viewed in the context of all the evidence, both new and old", *Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991), and when "the credibility of the [new] evidence" is presumed, *Justus v. Principi,* 3 Vet.App. 510, 513 (1992). If the evidence is new and material, the second step is that the Board must then review it on the merits "in the context of the other evidence of record" to determine whether the prior disposition of the claim should be altered. *Jones (McAr- thur) v. Derwinski,* 1 Vet.App. 210, 215 (1991).

The Court has synthesized the applicable law as follows:

> "New" evidence is that which is not "mere- ly cumulative" of other evidence of record. [*Colvin, supra.*] "Material" evidence is that which is relevant to and probative of the issue at hand and where there is a reasonable possibility that, when viewed in the context of all the evidence, both new and old, it would change the outcome.

*Blackburn v. Brown,* 8 Vet.App. 97, 102, (1995); *see also Cox (Billy) v. Brown,* 5 Vet.App. 95, 98 (1993). In determining whether evidence is material, relevant stat- utes and regulations must be examined. *See Chavarria v. Brown,* 5 Vet.App. 468, 471 (1993). A Board determination as to wheth- er evidence is "new and material" is a ques- tion of law subject to de novo review by this Court under 38 U.S.C. § 7261(a)(1). *See Masors v. Derwinski,* 2 Vet.App. 181, 185 (1992); *Jones,* 1 Vet.App. at 213; *Colvin, supra.*

■■■ The Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all materi- al issues of fact and law presented on the record; the statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Simon v. Derwinski,* 2 Vet. App. 621, 622 (1992); *Masors,* 2 Vet.App. at 188; *Gilbert v. Derwinski,* 1 Vet.App. 49, 57 (1990). To comply with this requirement, the Board must analyze the credibility and pro- bative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the veteran. *See Caluza v. Brown,* 7 Vet.App. 498, 506 (1995); *Gabrielson v. Brown,* 7 Vet.App. 36, 39–40 (1994); *Aberna- thy v. Principi,* 3 Vet.App. 461, 465 (1992); *Gilbert, supra.* Moreover, the Board may not rely on its own unsubstantiated medical conclusions to reject expert medical evidence in the record; rather, the Board may reject a claimant's medical evidence only on the basis of other independent medical evidence. *See Thurber v. Brown,* 5 Vet.App. 119, 122 (1993); *Hatlestad v. Derwinski,* 3 Vet.App. 213, 217 (1992) (*Hatlestad II*); *Colvin, su- pra.* The reasons-or-bases requirement of section 7104(d)(1) applies fully to the Board's review of prior RO decisions for CUE. *See Russell, supra.*

■■■ Pursuant to 38 U.S.C. § 5107(a), once a claimant has submitted a well-ground- ed claim, the Secretary is required to assist that claimant in developing the facts perti- nent to the claim. *See* 38 C.F.R. § 3.159 (1994); *Littke v. Derwinski,* 1 Vet.App. 90, 91–92 (1990). Where the record does not adequately reveal the current state of the claimant's disability and the claim is well grounded, the fulfillment of the statutory duty to assist requires a thorough and con-

temporaneous medical examination. *See Suttmann v. Brown,* 5 Vet.App. 127, 138 (1993); *Green (Victor) v. Derwinski,* 1 Vet. App. 121, 124 (1991).

 The Court reviews BVA factfinding under a "clearly erroneous" standard; "if there is a 'plausible' basis .in the record for the factual determinations of the BVA, ... [the Court] cannot overturn them". *Gilbert,* 1 Vet.App. at 53; 38 U.S.C. § 7261(a)(4).

### B. Application of Law to Facts

**1. Earlier effective date for increased right-eye rating.** The June 1957 RO decision awarding the veteran a 30% rating for his right-eye disability was never appealed and thus became final. The RO increased the award to 40% in March 1988. In order for the veteran to be awarded an earlier effective date for the 40% award, he would have to show CUE in the June 1957 RO decision. *See Russell, supra.* In its June 1990 decision, the Board adjudicated the issue whether there had been CUE in the June 1957 RO decision, and determined that there had been no CUE. That BVA decision was not appealed, and it became final.

 In September 1990, in the claim that is here on appeal, the veteran sought to "reopen" his claim for an earlier effective date, and the BVA denied reopening. Although the veteran presented his September 1990 claim as a claim to reopen, it was actually an attempt to have his claim of CUE in the 1957 RO decision readjudicated. Because the Board had adjudicated that particular CUE claim in its June 1990 decision and the veteran did not appeal that decision, the June 1990 decision is res judicata as to the claim of CUE, and the Court is without jurisdiction to review the appellant's claim for an earlier effective date, *see Talbert, Olson, Schmidt,* and *Russell,* all *supra,* and the appeal as to that portion of the BVA decision will be dismissed.

Although *Talbert, supra,* seemed to state in dictum that a CUE claim could be reopened if new and material evidence were submitted indicating that the correct facts, as known at the time of the initial denial, were not before the RO, claims to reopen and

CUE claims are different, mutually exclusive routes to the goal of determining an effective date. With a successful CUE claim, the effective date of the award will be the date of the claim which was denied in the RO decision that is found to have contained CUE. *See* 38 C.F.R. § 3.105(a); *Russell,* 3 Vet.App. at 314 (when prior decision is found to contain CUE, "*that* decision is revised to conform to what the decision should have been"). However, when a claim to reopen is successful and the benefit sought is awarded upon readjudication, the effective date is the date of the claim to reopen. *See* 38 C.F.R. § 3.400 (1994); *Spencer v. Brown,* 4 Vet.App. 283, 293 (1993), *aff'd,* 17 F.3d 368 (Fed.Cir. 1994). To speak of reopening a CUE claim with new and material evidence would thus seem to be a contradiction in terms because reopening cannot establish an effective date earlier than the date of the claim to reopen, and could never establish the effective date that a successful CUE claim would provide.

The appellant also argues that there was CUE in the 1990 BVA decision. The 1990 Board decision was not appealed to this Court and became final. Under *Smith, supra,* the CUE review authority in 38 C.F.R. § 3.105(a) relates only to review of agency of original jurisdiction (i.e., RO) decisions and not to those of the Board. Therefore, this Court may not review the 1990 Board decision for CUE.

The Court notes the existence of a considerable amount of evidence indicating that the veteran in 1957 had a serious cosmetic defect as to his right eye. This evidence includes a November 1956 SMR stating that the eye was "white" (R. at 117); an August 1958 VA medical report stating that the "lens substance [was] opaque" (R. at 215); and 1988 and 1990 statements from Drs. Lessell and Bajart, respectively, opining, after a review of contemporaneous evidence including SMRs and a 1958 photograph of the veteran, that the cosmetic defect had existed since his injury (R. at 325, 436). Dr. Bajart expressly characterized the cosmetic defect as "serious". R. at 436. Finally, no evidence of record indicates that the appearance of the veteran's right eye changed after he left service in 1957. The Court further notes

that the August 1990 letter to the veteran from the RO might have created the impression that the veteran could appeal the issue of CUE, which had been decided in the 1990 BVA decision, to this Court in conjunction with a later attempt to reopen such a claim. *See* R. at 432. As discussed above, notwithstanding the impression that may have been given by *Talbert* dictum, no such claim to reopen can be brought, and the particular CUE claim once finally readjudicated is res judicata and may not be brought again.

To the extent that the appellant believes he was misled by the RO's August 1990 letter into not filing an appeal of the 1990 BVA decision to this Court,

> the Court draws [his] attention to 38 U.S.C. § 503, which permits equitable relief by the Secretary in certain cases of administrative error. The Court expresses no opinion as to the applicability of that statute, which is a matter wholly within the discretion of the Secretary and is not reviewable by this Court.

*McTighe v. Brown,* 7 Vet.App. 29, 31 (1994) (citation omitted); *see also Willis v. Brown,* 6 Vet.App. 433, 435–36 (1994); *Suttmann, supra; Russell,* 3 Vet.App. at 312; *Darrow v. Derwinski,* 2 Vet.App. 303, 304–06 (1992); *see also* 38 C.F.R. § 2.7 (1994).

■■■■ ***2. Service connection for hearing loss.*** The veteran's claim for hearing loss was originally denied by the BVA in January 1986. (This Board decision was vacated in June 1990 as to the tinnitus claim only. R. at 416.) In the December 1993 BVA decision here on appeal, the Board reopened the veteran's claim for service connection for hearing loss and denied it on the merits. R. at 10; *see also* R. at 505–07. The Court reviews de novo the issue whether new and material evidence has been submitted to reopen a claim. *See Masors,* 2 Vet.App. at 185; *see also Jones* and *Colvin,* both *supra.* The evidence submitted as to the hearing-loss claim since January 1986 consists of the following: (1) the June 1987 letter from Dr. Clubb regarding possible inaccuracy of the in-service audiogram (R. at 298); ` (2) the veteran's sworn testimony in the May 1989 and November 1989 hearings (R. at 361, 394); (3) the February 1991 letter from Dr. Silver-

stein stating that the veteran's hearing loss "may well be causally related to the blast" (R. at 453); and (4) the January 1993 VA medical examination report stating that the veteran's hearing loss could possibly have been caused by trauma, but that it was "usual to see some evidence of trauma audiometrically" (R. at 510–11). Presuming the credibility of this evidence, the Court finds, on de novo review, that it was not cumulative of evidence already in the record, and that it presented a reasonable possibility of changing the outcome. The Board thus did not err in reopening the claim as to hearing loss.

■■■ The Court reviews the Board's adjudication on the second *Manio* step, the merits, under the "clearly erroneous" standard. *See Gilbert, supra.* However, in this case, the Court does not have an adequate basis for judicial review because the Board's statement of reasons or bases did not address all of the evidence. *See Caluza, Gabrielson,* and *Simon,* all *supra; Masors,* 2 Vet.App. at 188; *Gilbert,* 1 Vet.App. at 57. The Board addressed the veteran's in-service complaints of tinnitus (R. at 104, 112); the 1956 audiogram (R. at 112); a November 1956 SMR noting "no loss [of] hearing" (R. at 104); the fact that the veteran's 1957 compensation application did not mention hearing loss; the 1993 VA examination report (R. at 510–11); and the letters from Drs. Clubb and Silverstein (R. at 254–57, 298–99, 453).

The Board did not discuss the statement by Dr. Bailen that he had been the veteran's physician for a number of years and that "past history reveals ... hearing loss in the right ear" after the 1956 injury (R. at 233), or the appellant's sworn testimony that his hearing difficulty began at the time of his injury and that he had had hearing problems at the time of the injury and noticeable, gradually increasing hearing loss dating from the 1960s (R. at 271, 361, 394). The Board did not discuss the credibility of the 1956 audiogram, which was challenged in Dr. Clubb's June 1987 letter (R. at 298), or the effect of the credibility of the 1956 audiogram on the weight given to the 1993 VA examination report, which "presume[ed the] veracity" of the 1956 audiogram (R. at 510–11). Furthermore, the Board did not cite to any

evidence in the record for a possible cause of the veteran's hearing loss other than the blast injury. The Board may not reject the medical opinions of Drs. Bailen, Clubb, and Silverstein merely by putting forward its own unsubstantiated medical conclusions. *See Thurber, Hatlestad,* and *Colvin,* all *supra.*

Finally, the Board decided that the medical nexus evidence from Drs. Bailen, Clubb, and Silverstein was outweighed by the 1993 VA examination report because the private physicians had based their medical opinions "upon history as presented by the appellant" and "the opinions of the [private physicians] are not based upon contemporaneous [SMRs] or records generated soon after service". Assuming, arguendo, that these could be valid grounds for discrediting a physician's medical opinion, this Board statement is not an adequate statement of reasons or bases for rejecting Dr. Clubb's May 1985 statement listing numerous reasons for concluding that the blast injury caused the veteran's deafness, none of which cited the history as provided by the appellant. R. at 256–57. Nor does it explain the Board's basis for indicating that Dr. Clubb had not reviewed the veteran's SMRs. *See* R. at 298–99 (letter from Dr. Clubb indicating that he had reviewed the veteran's SMRS).

The Court holds that the Board's statement of the reasons or bases for its December 23, 1993, decision as to the hearing-loss claim is not adequate for judicial review. The Court notes that Dr. Clubb stated that a tomogram of the right ear might show chain disarticulation, which would be indicative of a blast-type injury. R. at 256–57. On remand, the BVA should provide such an examination if requested by the veteran. *See* 38 U.S.C. § 5107(a); *see also Suttmann* and *Green,* both *supra.*

### III. Conclusion

Upon consideration of the record and the submissions of the parties, the Court dismisses the appeal as to that part of the December 23, 1993, BVA decision that denied an earlier effective date for the right-eye disability, and vacates the decision in part and remands the matter of service connection for a hearing disability for expeditious further development and readjudication, on the basis of all applicable law and regulation, and issuance of a readjudicated decision supported by an adequate statement of reasons or bases—all consistent with this opinion. *See* 38 U.S.C. §§ 1110, 5107(a), 7104(d)(1), 7261; *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991); *Allday v. Brown,* 7 Vet.App. 517, 533–34 (1995). "On remand, the [claimant] will be free to submit additional evidence and argument" on the remanded claim. *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). The Court denies the Secretary's motion for summary affirmance. A final decision by the Board following the remand herein ordered will constitute a new decision which, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant.

APPEAL DISMISSED IN PART; VACATED AND REMANDED IN PART.

NEBEKER, Chief Judge, concurring:

While I concur in the opinion which operates to dispose of the various issues presented, I disassociate myself from so much of the opinion which counsels and implicitly encourages the seeking and awarding of equitable relief. This matter is totally beyond our authority and competence. Thus, we are ill advised to imply a view on the matter.