﻿Citation Nr: AXXXXXXXX
Decision Date: 12/14/18 Archive Date: 12/14/18

DOCKET NO. 181004-489
DATE: December 14, 2018
ORDER
The claim of entitlement to an effective dater earlier than February 28, 2007, for the grant of service connection for hypertension is denied. 
The claim of entitlement to an initial disability rating in excess of 10 percent for hypertension is denied. 
The claim of entitlement to an initial compensable disability rating for headaches is denied. 
The claim of entitlement to an increased initial rating for bilateral pes planus/plantar fasciitis, currently rated as 30 percent disabling, to include whether a separate rating is warranted for plantar fasciitis, is denied. 
FINDINGS OF FACT
1. An unappealed April 2003 rating decision denied the claim of entitlement to service connection for hypertension. 
2. No formal or informal application to reopen the claim of entitlement to service connection for hypertension was received prior to February 28, 2007. 
3. During the entire appeal period, the Veteran’s hypertension has not been manifested by diastolic pressure predominantly 110 or more, or systolic pressure predominantly 200 or more. 
4. During the entire appeal period, the Veteran’s headaches are not manifested by prostrating attacks. 
5. At no time during the appeal period has the Veteran’s bilateral pes planus/plantar fasciitis been manifested by marked pronation, extreme tenderness of the plantar surface, or marked inward displacement and severe spasm of the Achilles tendon on manipulation of either foot. 
CONCLUSIONS OF LAW
1. The April 2003 rating decision denying the claim for hypertension is final. 38 U.S.C. §§ 5107, 5108, 7105; 38 C.F.R. §§ 3.156, 20.302, 20.1103. 
2. The criteria for an effective date earlier than February 28, 2007, for service connection for hypertension have not been met. 38 U.S.C. §§ 5101, 5107, 5110, 7105; 38 C.F.R. § 3.400. 
3. The criteria for an initial disability rating in excess of 10 percent for hypertension have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.104, Diagnostic Code 7199-7101. 
4. The criteria for an initial compensable rating for headaches have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1-4.14, 4.20, 4.124a, Diagnostic Code 8199-8100. 
5. The criteria for an initial disability rating in excess of 30 percent for bilateral pes planus/plantar fasciitis have not been met. 38 U.S.C. § 1155; 38 C.F.R. § 4.71a, Diagnostic Code 5276. 
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran served on active duty for training (ACDUTRA) with the Army National Guard from March 1977 to June 1977. He also had honorable active duty service with the United States Army from November 1990 to April 1991. 
On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework. 
The Board of Veterans’ Appeals (Board) notes that in Rice v. Shinseki, 22 Vet. App. 447 (2009), the United States Court of Appeals for Veterans Claims (Court) held that a claim of entitlement to a total rating based upon individual unemployability (TDIU) is part of an increased rating claim when such claim is expressly raised by the Veteran or reasonably raised by the record. The Court further held that when evidence of unemployability is submitted at the same time that the Veteran is appealing the initial rating assigned for a disability, the claim for a TDIU will be considered part and parcel of the claim for benefits for the underlying disability. Id. In this case, however, it does not appear that the Veteran contends he cannot obtain or maintain substantially gainful employment due to his service-connected hypertension, headaches, or bilateral foot disability. Therefore, no further consideration of entitlement to a TDIU is warranted based on the facts of this case. 
 
Earlier Effective Date
Except as otherwise provided, the effective date of an award of compensation based on an original claim, a claim reopened after final disallowance, or a claim for increase shall be fixed in accordance with the facts found, but shall be no earlier than the date of receipt of the application therefor. 38 U.S.C. § 5110(a). The statutory provision is implemented by regulation, which provides that the effective date for an evaluation and award of compensation based on an original claim, a claim reopened after final disallowance, or a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is the later. 38 C.F.R. § 3.400. 
The Veteran contends that he is entitled to an earlier effective date for the grant of service connection for hypertension. 
The Veteran initially filed a claim for service connection for hypertension in June 2001. In an April 2003 rating decision, the local Regional Office (RO) denied service connection for hypertension. The Veteran did not appeal this decision. Moreover, the Veteran did not submit additional evidence within one year. Thus, the April 2003 decision became final. See 38 U.S.C. § 7105(c); 38 C.F.R. §§ 3.156(b), 20.1103. 
In February 2007, the Veteran filed a request to reopen the claim for service connection for hypertension. In December 2015, the Board granted entitlement to service connection for hypertension. In a December 2015 rating decision, the RO effectuated the Board decision, assigning an effective date of February 28, 2007, for service connection. 
As indicated above, the Veteran did not appeal the previous decision issued by the RO in April 2003. Furthermore, the Board finds no new and material evidence was submitted with respect to the Veteran’s hypertension claim within the applicable one-year period. See 38 C.F.R. § 3.156(b); Jennings v. Mansfield, 509 F.3d 1362, 1368 (Fed. Cir. 2007). As such, the February 2003 rating decision became final. See Leonard v. Principi, 17 Vet. App. 447 (2004); Sears v. Principi, 16 Vet. App. 244, 246-50 (2002), aff’d, 349 F.3d 1326 (Fed. Cir. 2003); Flash v. Brown, 8 Vet. App. 332 (1995). 
Once a rating decision is final, only a request for a revision premised on clear and unmistakable error could result in the assignment of an earlier effective date. See Rudd v. Nicholson, 20 Vet. App. 296 (2006); see also Leonard v. Nicholson, 405 F.3d 1333, 1337 (Fed. Cir. 2005) (“absent a showing of clear and unmistakable error, [the Veteran] cannot receive disability payments for a time frame earlier than the application date of his claim to reopen, even with new evidence supporting an earlier disability date.”); Flash v. Brown, 8 Vet. App. 332, 340 (1995) (“when a claim to reopen is successful and the benefit sought is awarded upon readjudication, the effective date is the date of the claim to reopen.”); Bingham v. Nicholson, 421 F.3d 1346 (Fed. Cir. 2005). 
In this case, there simply is no legal authority for the Board to assign an earlier effective date, as the RO has already assigned the earliest possible effective date for the award of service connection. As discussed above, the April 2003 rating decision is final, and, as such, it is no longer the appropriate point from which to determine the effective date of an award. See 38 C.F.R. § 3.400; Rudd, 20 Vet. App. at 296. Indeed, in Sears v. Principi, the United States Court of Appeals for the Federal Circuit (Federal Circuit) held that the earliest possible effective date of service connection for a reopened claim was the date the reopened claim was received. Sears v. Principi, 349 F.3d 1326 (Fed. Cir. 2003). As the Federal Circuit explained, “[t]he statutory framework simply does not allow for the Board to reach back to the date of the original claim as a possible effective date for an award of service-connected benefits that is predicated upon a reopened claim.” Id. at 248. 
After review of the record, the Board finds that there was no communication received after the April 2003 rating decision became final and prior to February 28, 2007, that established an informal or formal application to reopen the previously denied claim of service connection for hypertension. On February 28, 2007, the Veteran filed a formal claim to reopen service connection for hypertension. As previously noted, service connection was awarded from February 28, 2007, in a December 2015 rating decision. The Veteran appealed the effective date for the grant of service connection. 
The request to reopen the claim for service connection for hypertension was not received until February 28, 2007. The statute provides that the effective date of an award of compensation based on a claim reopened after final disallowance shall be fixed in accordance with the facts found, but shall be no earlier than the date of receipt of the application therefor. 38 U.S.C. § 5110(a). Because the application to reopen the claim for service connection for hypertension was not received until February 28, 2007, and the effective date can be no earlier than the claim to reopen, an earlier effective date for the grant of service connection for hypertension is legally precluded. 
Furthermore, to the extent that the Veteran complained of, or was treated for, hypertension prior to the effective date assigned, the Board notes that the date of a VA treatment record does not constitute an informal claim when service connection has not yet been established. See prior 38 C.F.R. § 3.157; Lalonde v. West, 12 Vet. App. 377 (1999). 
In cases such as this, where the law is dispositive and the case turns on undisputed facts regarding a prior final decision and the date of receipt of a claim to reopen, the appeal should be denied because of the absence of legal merit. See Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). 
Increased Rating
Disability ratings are determined by applying the criteria set forth in VA’s Schedule for Rating Disabilities. The Schedule is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. When two evaluations are potentially applicable, VA will assign the higher evaluation when the disability more nearly approximates the criteria for the higher rating. 38 C.F.R. § 4.7. VA will resolve reasonable doubt as to the degree of disability in favor of the Veteran. 38 C.F.R. § 4.1. If the evidence for and against a claim is in equipoise, the claim will be granted. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 56 (1990). Any reasonable doubt regarding the degree of disability should be resolved in favor of the claimant. 38 C.F.R. § 4.3. 
In accordance with 38 C.F.R. §§ 4.1, 4.2 and Schafrath v. Derwinski, 1 Vet. App. 589 (1991), the Board has reviewed all evidence of record pertaining to the history of the service-connected disabilities at issue. The Board has found nothing in the historical record which would lead to the conclusion that the current evidence of record is not adequate for rating purposes. Moreover, the Board is of the opinion that this case presents no evidentiary considerations which would warrant an exposition of remote clinical histories and findings pertaining to the disability. 
Each disability is viewed in relation to its history. 38 C.F.R. § 4.1; Peyton v. Derwinski, 1 Vet. App. 282 (1991). The Board notes that where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. 38 C.F.R. §§ 4.1, 4.2 (2016); see also Francisco v. Brown, 7 Vet. App. 55 (1994). In Hart v. Mansfield, 21 Vet. App. 505 (2007), however, the Court held that “staged ratings” are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. 
The evaluation of the same disability under various diagnoses is to be avoided. 38 C.F.R. § 4.14. Section 4.14 does not preclude the assignment of separate evaluations for separate and distinct symptomatology where none of the symptomatology justifying an evaluation under one diagnostic code is duplicative of or overlapping with the symptomatology justifying an evaluation under another diagnostic code. Esteban v. Brown, 6 Vet. App. 259, 262 (1994). 
VA must consider all favorable lay evidence of record. 38 U.S.C. § 5107(b); Caluza v. Brown, 7 Vet. App. 498 (1995). The Veteran is competent to testify in regard to the onset and continuity of symptomatology. Heuer v. Brown, 7 Vet. App. 379, 384 (1995); Falzone v. Brown, 8 Vet. App. 398, 403 (1995); Caldwell v. Derwinski, 1 Vet. App. 466 (1991). 
The Board has reviewed all the evidence in the record. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that all of the evidence submitted by the Veteran or obtained on his behalf be discussed in detail. Rather, the Board’s analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000). 
In this case, the Veteran seeks entitlement to increased ratings for his service-connected disabilities of hypertension, headaches, and bilateral pes planus/plantar fasciitis. Each issue will be discussed in turn. 
A. Hypertension
The Veteran asserts that his service-connected hypertension warrants a higher initial rating because his level of impairment is worse than contemplated by the currently assigned rating. The Veteran’s hypertension is rated at 10 percent under 38 C.F.R. § 4.104, Diagnostic Code 7199-7101, effective from the grant of service connection as of February 28, 2007. Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the specific basis for the evaluation assigned. 38 C.F.R. § 4.27. Here, the hyphenated diagnostic code indicates that the Veteran’s hypertension is rated by analogy under the criteria for hypertensive vascular disease (hypertension and isolated systolic hypertension) under Diagnostic Code 7101. 
Diagnostic Code 7101 provides a 10 percent rating for diastolic pressure predominantly 100 or more, or systolic pressure predominantly 160 or more, or where an individual with a history of diastolic pressure predominantly 100 or more requires continuous medication for control. A 20 percent rating is assigned for diastolic pressure predominantly 110 or more, or systolic pressure predominantly 200 or more. A 40 percent rating is assigned for diastolic pressure predominantly 120 or more. Lastly, a 60 percent rating is assigned for diastolic pressure predominantly 130 or more. 
After review of the claims file, the Board finds that at no time during the appeal period has the Veteran’s hypertension been manifested by diastolic pressure predominantly 110 or more, or systolic pressure predominantly 200 or more. The medical records show that his blood pressure has been well below 200/110 during the entire period on appeal. For limited example, in March 2007, his blood pressure was recorded at 180/100. In August 2007, it was recorded at 136/86. By February 2008, it was 144/82. His blood pressure continued to not meet the criteria for a higher rating through the time of his August 2015 VA examination for hypertension. At that examination, his blood pressure was recorded as 160/78, 158/75, and 153/51. 
Since the August 2015 VA examination, VA medical records show that the Veteran’s hypertension has continued to be below 200/110. In February 2016, his blood pressure was recorded at 144/80. In April 2017, it was recorded at 143/69. In April 2018, the Veteran’s blood pressure reading was 142/70. 
The Board finds that the Veteran is not entitled to an initial disability rating in excess of 10 percent for hypertension. In this regard, there is no record of a history of diastolic pressure predominantly 110 or more; or, systolic pressure predominantly 200 or more. In fact, the Veteran’s diastolic pressure is predominantly shown to be 100 or less, and his systolic pressure is generally shown to be 180 or less. Therefore, an initial rating in excess of 10 percent for hypertension is not warranted. 38 C.F.R. § 4.104, Diagnostic Code 7101. 
Thus, the Board finds that the preponderance of the evidence is against the claim and the doctrine of benefit-of-the- doubt is not applicable. See 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3. Accordingly, an initial rating in excess of 10 percent for hypertension is not warranted. 

B. Headaches
The Veteran asserts that he should have a higher initial rating for his headaches, as his symptoms are worse than those contemplated by the currently assigned rating. 
The Veteran’s service-connected headaches are currently rated as noncompensable for the entire appeal period under 38 C.F.R. § 4.124a Diagnostic Code 8199-8100. As previously discussed, hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the specific basis for the evaluation assigned. 38 C.F.R. § 4.27. Here, the hyphenated diagnostic code indicates that the Veteran’s headaches are rated by analogy under the criteria for migraines under Diagnostic Code 8100. Because Diagnostic Code 8100 contemplates the Veteran’s symptoms of headaches and a closely analogous headache diagnosis, the Board finds that the Veteran is properly evaluated under Diagnostic Code 8100. 
Under Diagnostic Code 8100, a noncompensable rating is warranted for less frequent attacks than as follows. A 10 percent rating is warranted for migraines with characteristic prostrating attacks occurring on an average of once in two months over the last several months. A 30 percent rating is warranted for migraines with characteristic prostrating attacks occurring on an average of once a month over the last several months. A 50 percent rating is warranted for migraines with very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. 
Governing case law and regulations have not defined “prostrating.” For reference, the Board notes that “prostration” is defined as “extreme exhaustion or powerlessness.” See DORLAND’S ILLUSTRATED MEDICAL DICTIONARY 1531 (32d. ed. 2012). 
On VA examination in April 2012, the examiner noted that the Veteran was diagnosed with a headache condition. No other notations were provided with regard to the Veteran’s headaches. 
On VA examination in August 2015, the Veteran reported that he experienced frontal headaches, two to three times per week, lasting for one to two hours. He did not take any medication for his headaches. He indicated that his headaches were possibly productive of blurring of vision; however, he was unsure. The Veteran did not have characteristic prostrating attacks of migraine headache pain. Furthermore, the Veteran did not have prostrating attacks of non-migraine headache pain. The examiner noted that the Veteran’s headaches did not impact his ability to work. 
A review of the record shows that the Veteran receives treatment at the VA Medical Center for various disabilities. However, there is no indication from the record that his headache symptoms are manifestly different than those reported at his VA examinations. 
Based on the foregoing evidence, a compensable rating for the Veteran’s headaches is not warranted. In this regard, there is no evidence of record showing that the Veteran’s headaches were productive of prostrating attacks. To that end, none of the VA examination reports indicate that the Veteran experienced prostrating attacks, and the Veteran’s extensive post-service medical records were silent for such symptoms. Thus, the Board finds that the Veteran’s headaches are productive of less frequent attacks. Therefore, an initial compensable rating for headaches is not warranted. 38 C.F.R. § 4.124a, Diagnostic Code 8100. 
For these reasons, the Board finds that at no time during the period in question has the disability warranted more than a noncompensable evaluation. See Hart v. Mansfield, 21 Vet. App. 505 (2007). 
Because the preponderance of the evidence is against the claim, the benefit-of-the-doubt provisions are inapplicable. 38 U.S.C. § 5107; 38 C.F.R. § 4.3; Gilbert, 1 Vet. App. at 56. Accordingly, the Veteran’s claim for an increased rating is denied. 

C. Bilateral Foot Disability
Throughout the appeal period, the Veteran’s bilateral foot condition has been rated as a single disability under 38 C.F.R. § 4.71a, Diagnostic Code 5276. Pursuant to Diagnostic Code 5276, a 30 percent rating is assigned for severe bilateral pes planus and requires objective evidence of marked deformity (pronation, abduction, etc.), pain on manipulation and use accentuated, an indication of swelling on use, and characteristic callosities. A 50 percent rating is assigned for pronounced bilateral pes planus and requires marked pronation, extreme tenderness of plantar surfaces of the feet, marked inward displacement and severe spasm of the tendo Achilles on manipulation, and the disability is not improved by orthopedic shoes or appliances. 38 C.F.R. § 4.71a, Diagnostic Code 5276. Severe and pronounced pes planus are provided with separate ratings for unilateral or bilateral disabilities. Id. 
The criteria under Diagnostic Code 5276 are conjunctive, not disjunctive. See Melson v. Derwinski, 1 Vet. App. 334 (1991) (use of the conjunctive in a statutory provision meant that all of the conditions listed in the provision must be met); cf. Johnson v. Brown, 7 Vet. App. 95 (1994) (only one disjunctive requirement must be met in order for an increased rating to be assigned). 
Applying the rating criteria to the facts of this case, the Board finds that the preponderance of the evidence is against an evaluation in excess of 30 percent for the Veteran’s bilateral foot disability. 
On VA examination in September 2011, the Veteran reported that the pain he has always had in his feet were primarily in the sole and arch of each foot. He further reported some numbness in the toes and sensitivity to cold temperatures. He indicated weakness, stiffness, swelling, and occasional heat. He denied redness, but endorsed fatigability and lack of endurance to both feet. The examiner noted that the primary symptom at rest was throbbing. Additionally, standing and walking caused aching and occasional sharp sensation. On physical examination, the examiner noted that the Veteran had palpable dorsalis pedis pulses to both feet. Faint posterior tibial pulses were noted. There was pain to palpation toward the plantar medial, plantar central, plantar distal heel and the plantar arch, all along the plantar fascia on both feet, and along the mid central arch musculature. There was no tenderness to the posterior tibial tendon insertion or the posterior medial ankle along the course of the posterior tibial tendon of either foot. There was deep loss of protection and sensation noted to the distal aspect of the lesser digits. There was no pain along the lesser digits. The examiner noted that the Veteran had some mild hammertoe deformities; however, they were passively correctable. In addition, he had a forefoot varus malalignment or compensated forefoot varus malalignment deformity relative to the rearfoot that was correctable by manipulation. There was no pain on palpation to the Achilles tendon. The Achilles tendon was internally bowed bilaterally with weight-bearing. On non-weight-bearing, only the left Achilles tendon was internally bowed. The examiner further noted that there was no pain with the Achilles tendon alignment. 
The September 2011 VA examiner indicated that X-ray imaging revealed definite flatfoot deformity with increase in Kite’s angle. There was a mild increase in the calcaneal cuboid abduction angle. The left foot seemed to be much more severe or more severe in the pes planus than the right foot. There was a decrease in the calcaneal angle. The examiner noted that the Veteran did have some tri tarsal rearfoot and mid foot joint osteoarthritic changes that were mild to moderate in severity. He had a significant increase in the plantar declamation angle of the talus. There were no significant osteoarthritic changes noted to the forefoot joints, except for mild decrease in joint space and mild uneven joint space narrowing. There was a mild to moderate bunion deformity, more so on the left foot than the right foot. Based on the findings, the examiner diagnosed the Veteran with bilateral pes planus, moderate in severity, with concomitant residual plantar fasciitis, moderate in severity. 
A September 2013 VA treatment record shows that the Veteran’s primary concerns were with regard to the pain on the bottom of his feet, the entire plantar surface of each foot, and the severely thickened callus of both heels. On physical examination, the Veteran’s pedal pulses were strongly palpable on both feet. Capillary fill time was immediate to all toes. No paresthesias was noted. His protective sensation was intact to both feet. There was no structural deformity of the feet, and there was decent skin quality and integrity to both feet. There were thickened dystrophic toenails on both feet. There was pain along the planta fascial ligament of both feet, mainly in the arch area. There was severe hyperkeratosis to the entire plantar surface of both heels. 
A September 2014 VA treatment record shows that the Veteran complained of chronic pain in both feet, mainly the heels. He reported that he was last seen in the year prior for plantar fasciitis and described the same symptoms. During his last visit, the Veteran was given Spenco insoles; however, he continued to have the same pain. Physical examination revealed the same results as those noted in the September 2013 VA treatment record. 
Having carefully considered the Veteran’s claim, in light of the evidence of record and the applicable law, the Board finds that a disability rating higher than 30 percent for a bilateral foot disability is not warranted. The medical evidence does not show that the Veteran’s bilateral pes planus/plantar fasciitis meets the criteria for a 50 percent evaluation under Diagnostic Code 5276, as the evidence does not show that either foot is manifested by marked pronation, extreme tenderness of plantar surfaces of the feet, marked inward displacement, and severe spasm of the Achilles tendon on manipulation. 
Additionally, there is no evidence of any other foot disorder that results in separately ratable symptomology not contemplated by the rating currently assigned. Moreover, none of the remaining diagnostic codes pertaining to the foot, to include Diagnostic Code 5284, provide for a rating in excess of 30 percent. Under Diagnostic Code 5284, the current maximum 30 percent rating is appropriate because the evidence shows that the Veteran has effective function remaining in his right and left foot beyond that which would be equally well served by an amputation with use of a suitable prosthetic device. 
The Board has also considered whether a separate rating for the Veteran’s plantar fasciitis is warranted. For purposes of determining whether a veteran is entitled to separate ratings for different problems or residuals of an injury, such that separate evaluations do not violate the prohibition against pyramiding, the critical element is that none of the symptomatology for any one of the disorders is duplicative of, or overlapping with, the symptomatology of the other disorders. Esteban v. Brown, 6 Vet. App. 259 (1994). Plantar fasciitis involves inflammation of the plantar surface of the foot causing pain when walking and running, as well as swelling. Fenderson v. West, 12 Vet. App. 119, 122 (1999) (citing DORLAND’S ILLUSTRATED MEDICAL DICTIONARY 609-10, 1300 (28th ed. 1994)); Hoag v. Brown, 4 Vet. App. 209, 211 (1993). Bilateral plantar foot pain, swelling, inflammation, and tenderness of the plantar surfaces of the feet are specifically noted in the rating criteria for Diagnostic Code 5276. It is the overall disability picture and symptomatology that matters in determining whether separate ratings can be assigned, not the fact that there are separate diagnoses. Here, the symptomatology of the Veteran’s bilateral pes planus overlaps with the symptomatology of his bilateral plantar fasciitis. As such, a separate rating is not warranted for the Veteran’s plantar fasciitis. 
In making the determination that a rating in excess of 30 percent for the Veteran’s bilateral foot disability is not warranted, the Board has also considered the Veteran’s statements with respect to the severity of his bilateral foot disability. See Layno v. Brown, 6 Vet. App. 465, 469-71 (1994) (finding that a Veteran is competent to report on that of which he or she has personal knowledge). While the Veteran is competent to report his symptoms, disability evaluations are determined by comparing a veteran’s present symptomatology with criteria set forth in VA’s Schedule for Rating Disabilities, which is based on the average impairment of earning capacity resulting from service-connected disabilities in civilian occupations. Thus, while the Veteran is competent to provide evidence regarding his symptoms, such as pain and tenderness, he is not competent to identify a specific level of disability according to the appropriate diagnostic codes. In this case, the findings documented in the VA examination report and the medical treatment records address the rating criteria under which the Veteran’s disability is rated. As a result, the Board finds that these records are more probative than the Veteran’s subjective reports of increased symptomatology in determining whether a higher disability rating is warranted. 
Finally, the Board further observes that the Veteran’s statements alone cannot meet the burden imposed by the rating criteria under 38 C.F.R. § 4.71a, with respect to determining the severity of his bilateral foot disability. See Moray v. Brown, 2 Vet. App. 211, 214 (1993). Determining the severity of the Veteran’s disability must be accomplished by a medical professional. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). For these reasons, the Board finds that at no time during the period on appeal has the bilateral foot disability warranted more than a 30 percent evaluation. See Hart v. Mansfield, 21 Vet. App. 505 (2007). 
Because the preponderance of the evidence is against the claim, the benefit-of-the-doubt provisions are inapplicable. 38 U.S.C. § 5107; 38 C.F.R. § 4.3; Gilbert, 1 Vet. App. at 56. Accordingly, the Veteran’s claim for an increased rating is denied. 
 
B. MULLINS
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD Y. MacDonald, Associate Counsel