﻿Citation Nr: AXXXXXXXX
Decision Date: 01/10/19 Archive Date: 01/10/19

DOCKET NO. 180927-437
DATE: January 10, 2019

ORDER

Entitlement to an effective date prior to June 24, 2008 for the grant of service connection for an acquired psychiatric disorder, diagnosed as depression, not otherwise specified (previously addressed as immature personality, situational anxiety), is denied.

Entitlement to an initial rating in excess of 30 percent for the period prior to February 10, 2014, for depression, not otherwise specified (previously addressed as immature personality, situational anxiety), is denied.

Resolving all reasonable doubt in favor of the Veteran, entitlement to an initial rating of 70 percent, but no higher, for the period beginning February 10, 2014, for depression, not otherwise specified (previously addressed as immature personality, situational anxiety), is granted.

As new and relevant evidence has been received, the request to reopen the claim for service connection for an additional pulmonary/respiratory disability (claimed as injury related to his lungs) as secondary to service connected TB is granted.

Entitlement to service connection for an additional pulmonary/respiratory disability (claimed as injury related to his lungs) diagnosed as chronic obstructive pulmonary disorder (COPD) as secondary to service connected pulmonary tuberculosis (TB) is granted.

REMANDED

Entitlement to a compensable rating for pulmonary TB, inactive, is remanded. 

Entitlement to a total disability evaluation based on individual unemployability due to service-connected disabilities (TDIU) is remanded.

FINDINGS OF FACT

1. A July 2005 rating decision denied service connection for an acquired psychiatric disorder, claimed as anxiety. This rating decision was not timely appealed and became final.

2. On June 24, 2008, the Veteran filed a petition to reopen a claim for service connection for an acquired psychiatric disorder, claimed as anxiety. 

3. Prior to June 24, 2008, statement in support of claim, there was no pending formal claim, informal claims, or a written intent to file a claim for entitlement to service connection for any acquired psychiatric disorder following the last July 2005 denial.

4. For the period prior to February 10, 2014, the Veteran’s depressive disorder more closely approximated occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks; reduced reliability and productivity, occupational and social impairment with deficiencies in most areas, or total social and occupational impairment were not demonstrated.

5. As of February 10, 2014, the Veteran’s depressive disorder more closely approximated occupational and social impairment with deficiencies in most areas.

6. At no time since the June 2008 grant of service connection did the Veteran’s depressive disorder cause total social and occupational impairment.

7. In a September 2000 decision, the Board denied entitlement to service connection for an additional pulmonary/respiratory disability as secondary to service-connected TB.

8. Evidence received since the September 2000 Board decision relates to an unestablished fact that is necessary to substantiate the claim for service connection for an additional pulmonary/respiratory disability (claimed as injury related to his lungs) as secondary to service-connected TB.

9. The Veteran’s COPD was at least as likely as not caused by his service- connected TB.

CONCLUSIONS OF LAW

1. The criteria for entitlement to an effective date prior to June 24, 2008, for the grant of service connection for depression, not otherwise specified (previously addressed as immature personality, situational anxiety), have not been met. 38 U.S.C. § 5110; 38 C.F.R. § 3.400.

2. The criteria for an initial rating in excess of 30 percent for the period prior to February 10, 2014, for depressive disorder have not been met. 38 U.S.C. § 1155; 38 C.F.R. § 4.130, DC 9434.

3. The criteria for an initial rating of 70 percent, but no higher, for the period beginning February 10, 2014, for depressive disorder have been met. 38 U.S.C. § 1155; 38 C.F.R. § 4.130, DC 9434.

4. The September 2000 Board decision denying the Veteran’s claim for service connection for an additional pulmonary/respiratory disability as secondary to TB is final. 38 U.S.C. § 7104; 38 C.F.R. § 20.1100. 

5. Evidence received since the September 2000 denial is new and material and the claim for service connection for an additional pulmonary/respiratory disability lung disorder (claimed as injury related to his lungs) as secondary to TB is reopened. 38 U.S.C. § 5108; 38 C.F.R. § 3.156.

6. The criteria for service connection for COPD as secondary to TB have been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.310.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. 

The Veteran served on active duty from August 1974 to October 1978.

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a July 2018 rating decision.

Earlier Effective Date

Generally, the effective date of an award of a claim is the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400. The effective date of an award of disability compensation based on new and material evidence under 38 C.F.R. § 3.156 (other than service department records) received after a final disallowance shall be the date of receipt of the new claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110; 38 C.F.R. § 3.400(q)(2). Similarly, the effective date of an award of disability compensation based on a reopened claim under the provisions of 38 C.F.R. §§ 3.109, 3.156, 3.157, and 3.160(e) shall be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 C.F.R. § 3.400(r). The statutory framework does not allow for the Board to reach back to the date of the original claim as a possible effective date for an award of service-connected benefits that is predicated upon a reopened claim. Sears v. Principi, 16 Vet. App. 244 (2002). In order for the Veteran to be awarded an effective date based on an earlier claim, the Veteran has to show clear unmistakable error (CUE) in the prior denial of the claim. Flash v. Brown, 8 Vet. App. 332 (1995).

A finally adjudicated claim is an application, formal or informal, which has been allowed or disallowed by the agency of original jurisdiction and the action having become final by the expiration of 1 year after the date of notice of the disallowance, or by denial on appellate review, whichever is the earlier. 38 C.F.R. § 3.160(d). A reopened claim is any application for a benefit received after final disallowance of an earlier claim. 38 C.F.R. § 3.160(e).

VA has amended the regulations concerning the filing of claims, including no longer recognizing informal claims and eliminating the provisions of 38 C.F.R § 3.157. See Fed. Reg. 57,660, 57,695 (Sept. 25. 2014). The amendments, however, are only effective for claims and appeals filed on or after March 24, 2015. As the claim at issue in the appeal was filed before these amendments, the prior regulatory provisions apply. 

The date of receipt of a claim is the date on which a claim, information, or evidence is received by VA. 38 C.F.R. § 3.1(r). A claim is a formal or informal communication in writing requesting a determination of entitlement, or evidencing a belief in entitlement, to a benefit. 38 C.F.R. §§ 3.1(p); 3.155. The regulation which governs informal claims, 38 C.F.R. § 3.155, provides that any communication or action, indicating an intent to apply for one or more benefits under the laws administered by [VA], from a claimant...may be considered an informal claim. Such informal claim must identify the benefit sought. When a claim has been filed that meets the requirements of 38 C.F.R. § 3.151 or 3.152, an informal request for increase or reopening will be accepted as a claim.

A claimant is entitled to notice of any decision by VA affecting the payment of benefits or the granting of relief. 38 U.S.C. § 5104. Such notice must inform a claimant of the right to initiate an appeal by filing a notice of disagreement (NOD), plus the periods in which an appeal must be initiated and perfected. 38 C.F.R. § 3.103(f). A claimant may then initiate an appeal from a VA decision by the timely filing of a NOD in writing. 38 C.F.R. § 20.200. 

A substantive appeal must be filed within 60 days from the date the RO mailed a claimant the statement of the case or within the remainder of the one-year period from the date of mailing of the rating decision being appealed, whichever period ends. 38 C.F.R. §§ 20.200, 20.300, 20.302. Otherwise, the rating decision becomes final. See 38 C.F.R. § 20.1103.

The Veteran sought an effective date prior to June 24, 2008, for the grant of service connection for depression. 

Historically, the Veteran’s claim for entitlement to service connection for immature personality/situational anxiety was denied in a February 1980 rating decision. April 1982 and January 1989 decisions confirmed and continued the prior denial of service connection for the Veteran’s nervous condition. In February 2005, the Veteran filed a claim for service connection for a mental health disorder, claimed as anxiety. The RO denied the claim in an July 2005 rating decision. The Veteran did not appeal that decision and it became final. 

On June 24, 2008, the Veteran sought to reopen his claim for service connection for a mental health disorder, claimed as situational anxiety disorder. In December 2012, the Board granted the Veteran’s request to reopen his claim for service connection for a psychiatric disorder. In a December 2013 rating decision, the Veteran was granted service connection effective June 24, 2008.

A thorough review of the record does not show that any written communication by or on behalf of the Veteran in which service connection for any acquired psychiatric disorder was requested or was received from the date of his last final denial in July 2005 and his request to reopen his claim in June 2008. The record does not show that the Veteran filed any evidence which could be construed as seeking entitlement to service connection for an acquired psychiatric disorder between the July 2005 rating decision and the Veteran’s June 2008 statement in support of claim. As such, an effective date of June 24, 2008, is the appropriate effective date for the grant of service connection for the Veteran’s acquired psychiatric disorders. 38 U.S.C. § 5110(b); 38 C.F.R. § 3.400. 

The Board notes that the Veteran has asserted that service connection should be effective the date of his original claim for service connection for a mental health disorder (February 2005). While the Board is sympathetic to the Veteran’s claim, the law is well settled that the statutory framework does not allow for the Board to reach back to the date of the original claim as a possible effective date for an award of service-connected benefits that is predicated upon a reopened claim. Sears v. Principi, 16 Vet. App. 244 (2002). In order for the Veteran to have been awarded an effective date based on an earlier claim, the Veteran had to show clear unmistakable error (CUE) in the prior denial of the claim. Flash v. Brown, 8 Vet. App. 332 (1995). In this matter, the Veteran has not made such a claim. 

The Board notes that the Veteran, in his March 2017 Statement of Accredited Representative in Appealed Case, Form 646, asserted that the July 2005 rating decision did not become final because additional service treatment records (STRs) were made a part of the record in August 2005 and were not considered by the Rating Office in the July 2005 rating decision. See 38 C.F.R. §3.156(b). However, the Veteran’s claims file shows that his STRs were made a part of the record prior to the July 2005 rating decision and the August 2005 submissions were duplicative of STRs concerning his acquired psychiatric disorder previously of record. Furthermore, the July 2005 rating decision specifically noted that the Veteran’s service medical records associated with the Veteran’s claims folder had been considered in rendering the July 2005 decision. As such, the August 2005 STR submissions did not preclude the July 2005 rating decision from becoming final. 

Accordingly, as the preponderance of the evidence is against the claim, the benefit-of-the-doubt rule is not for application, and the claim must be denied. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Increased Initial Rating

Disability ratings are determined by application of the criteria set forth in VA’s Schedule for Rating Disabilities, which is based on average impairment of earning capacity. 38 U.S.C. § 1155; 38 C.F.R. Part 4. When a question arises as to which of two ratings applies under a particular Diagnostic Code, the higher rating is assigned if the disability more nearly approximates the criteria for the higher rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3. 

The Veteran’s entire history is to be considered when making disability evaluations. 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where, as here, the question for consideration is the propriety of the initial rating assigned, evaluation of the medical evidence since the effective date of the grant of service connection and consideration of the appropriateness of the assignment of different ratings for different periods of time, based on the facts found, is required. Fenderson v. West, 12 Vet. App. 119 (1999). Because the level of disability may have varied over the course of the claim, the rating may be “staged” higher or lower for segments of time during the period under review in accordance with such variations, to the extent the evidence shows distinct time periods where the service-connected disability has exhibited signs or symptoms that would warrant different ratings under the rating criteria. Hart v. Mansfield, 21 Vet. App. 505 (2007); Fenderson v. West, 12 Vet. App. 119 (1999). 

When rating a mental disorder, VA must consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the claimant’s capacity for adjustment during periods of remission. VA shall assign a rating based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner’s assessment of the level of disability at the moment of the examination. 38 C.F.R. § 4.126(a). When rating the level of disability from a mental disorder, VA will consider the extent of social impairment, but shall not assign a rating solely on the basis of social impairment. 38 C.F.R. § 4.126(b).

The Veteran’s depression had been assigned a 30 percent rating since his June 24, 2008, grant of service connection. 38 C.F.R. § 4.130, DC 9434. Almost all mental health disorders, including PTSD, are evaluated under the General Rating Formula for Mental Disorders (General Rating Formula). See 38 C.F.R. § 4.130, DC 9434. The Veteran contends his depression is more severe than reflected in the current ratings. 

Pursuant to the General Rating Formula, a 30 percent rating is warranted for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events).

A 50 percent disability rating is warranted for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

A 70 percent disability rating is warranted for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships.

A 100 percent disability rating is warranted for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name.

The symptoms listed in the General Rating Formula are not intended to constitute an exhaustive list, but rather serve as examples of the type and degree of symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002). If the evidence demonstrates that the claimant’s psychiatric disorder produces symptoms and resulting occupational and social impairment equivalent to that set forth in the criteria for a given rating, then that rating will be assigned. Mauerhan, 16 Vet. App. at 443. 

In June 2008, a VA medical center (VAMC) record indicated the Veteran presented for management of his mental health disorders. He was noted to have some obsessive-compulsive symptoms, which did not prevent him from focusing, but did irritate him. He reported that he did not have interim panic attacks and was sleeping okay with medication. His mental status, eye contact, mood, thought content, and perceptions were within normal limits and he attitude and behavior was found to be cooperative, responsible, and calm. He did not have any apparent abnormality of his motor behavior, and his affect was mood congruent. His speech was normal and his thought process was coherent and organized. He denied suicidal and homicidal ideas. He was not found to have any hallucinations. He was alert and oriented. 

In September 2008, a VAMC mental health note indicated the Veteran reported an increase in memory problems since being on his medication. He stated that he was repeating certain phrases in his head over and over and coming back to mind. He denied hearing voices and that the issue did not affect his daily function. He denied suicidal and homicidal ideation and denied audio visual hallucinations. He was noted to discontinue medication.

In April 2010, a VA examination regarding the Veteran’s mental disorders diagnosed him with anxiety disorder, not specified. He described his relationships as “pretty good” and stated he had been married for 15 years. He reported he had 15-year-old son with whom he had a “good” relationship. He stated he had no close friends and described his activities as spending time with family wand watching TV. He reported no history of suicide attempts or violence. He stated he was not individual or group therapy. He reported depression one time a month which he described as mild and lasting maybe a couple of hours. He reported that precipitating factors were just mostly financial problems. He stated that he suffered from anxiety daily. He stated that the anxiety was moderate and lasted all day, just at different levels. He reported that the precipitating factor was mostly being out in public. Upon examination, the Veteran was found to be clean, neatly groomed and appropriately dressed. His speech and psychomotor activity was unremarkable. His attitude was relaxed and his affect was normal. His mood was noted to be kind of anxious. His attention was intact and he was found to be intact to person, time, and place. His thought process and content were unremarkable and he was not found to have all delusions or hallucinations. He did not have inappropriate behavior. He was found to have panic attacks and stated that they occurred mostly when he was in a crowd or in an office with a person. He had no homicidal thoughts and stated that he had passive suicidal thoughts in the past. He had fair impulse control and no episodes of violence. His memory was normal. He reported he retired in 2003 from his employment as a truck-driver due to an accident where he hurt his shoulders. His mental health disorder symptoms were not found to be severe enough to interfere with his occupational and social functioning.

In May 2010, a VAMC record showed the Veteran to have presented with a report of doing “ok” with his anxiety, panic, obsessive and depressive symptoms. He reported minor panic symptoms 1 time a week, he stated he gets through them on his own and with medication. He stated his family life was going ok. His mental status, eye contact, mood, thought content, and perceptions were within normal limits and he attitude and behavior was found to be cooperative, responsible, and calm. He did not have any apparent abnormality of his motor behavior, and his affect was mood congruent. His speech was normal and his thought process was coherent and organized. He denied suicidal and homicidal ideas. He was not found to have any hallucinations. He was alert and oriented. 

In January 2011, a VAMC record showed the Veteran to have reported he was doing well. He stated that in the last 5 years of treatment, he was feeling much better in his anxiety and depression and was not voicing any current memory problems or focusing problems. His mental status, eye contact, mood, thought content, and perceptions were within normal limits and he attitude and behavior was found to be cooperative, responsible, and calm. He did not have any apparent abnormality of his motor behavior, and his affect was mood congruent. His speech was normal and his thought process was coherent and organized. He denied suicidal and homicidal ideas. He was not found to have any hallucinations. He was alert and oriented. 

In August 2012, a VAMC record showed the Veteran to have noted an increase in his panic symptoms. He stated his obsessive symptoms were no worse and he had no depression, per se. His mental status, eye contact, thought content, and perceptions were within normal limits and he attitude and behavior was found to be cooperative, responsible, and calm. He did not have any apparent abnormality of his motor behavior, and his affect was mood congruent. His speech was normal and his thought process was coherent and organized. He denied suicidal and homicidal ideas. He was not found to have any hallucinations. He was alert and oriented. His mood was noted to have occasional panic. 

In November 2013, a VA examination found the Veteran to have depression, not otherwise specified, which caused occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation. The Veteran reported that he was in school full-time and was trying to get a degree in computers. He stated he had been married 21 years and that he had an 18-year-old son. He reported feeling close to his son. He stated he had no friends, went to school, and watched TV. He denied a history of suicide attempt and denied any thoughts or plans for self-harm or harm to others. He stated that he had suicidal thoughts in the past, but did not have current thoughts. He stated that he was unemployed since 2003-2004 when he was laid off due to an employer relocating. Upon examination, his symptoms were found to be depression, anxiety, chronic sleep impairment, and disturbances of motivation and mood. He also was noted to have depressed mood daily, for several months, which was mild to moderate, mild crying spells which occurred 2-3 times a week and were triggered when talking about his brother’s death, mild daily decreased motivation in pleasurable activities which had lasted several months, daily mild anxiety or “feeling nervous” which had lasted several months, and daily mild to moderate trouble sleeping. 

A February 10, 2014 private physician’s psychiatric evaluation report reflects that the Veteran’s chief complaint was that he felt anxious. The Veteran reported symptoms of anxiety, depression, decreased appetite, poor concentration, forgetfulness, four panic attacks a day, physical symptoms of anxiety, agoraphobia, and ruminations. Upon examination, the Veteran was alert and full oriented. His affect was reactive and his mood was anxious and dysphoric. His thought processes were confused. He denied homicidal and suicidal thoughts. He reported suicidal ideation as recently as four months prior. He denied hallucinations and no delusions were detected. His energy level was low and he was easily distracted. He was forgetful of facts and events and his insight was limited. His judgment was intact. The examiner opined that the Veteran was suffering from severe symptoms of major depression and panic disorder. The examiner stated that the Veteran’s depression and panic disorder symptoms prevented him from securing and maintaining substantially gainful occupation. The examiner found that since 2003 the Veteran had occupational and social impairment with deficiencies in most areas such as work, school, family relations, and mood. The Veteran reported academic problems with frequent failing of classes for the prior two years; he reported frequent panic and depression affecting his ability to function independently, appropriately, and effectively; he had neglect of personal appearance and required assistance from his wife for simple household and self-care tasks; he had no capacity to adapt to stressful circumstances; he was unable to maintain effective relationships with others outside of his immediate household. The examiner noted he had reviewed the Veteran’s claims file, including his VAMC record through 2011.

In September 2014, a VAMC record showed the Veteran to have indicated that he was stressed lately by many issues due to family and lung issues. He reported no major panic attacks and minor anxieties. He noted his obsessive symptoms were less often and appetite was within normal limits. He noted that his school grades dropped after he missed many days due to lung issues – but that he still planned to go back. His family life was noted as “ok.” He stated that his wife was disabled by an auto accident and that he had to help her. He reported that he goes to Church regularly. He had no active self-directed or other directed violent thoughts. His mental status, eye contact, thought content, and perceptions were within normal limits and he attitude and behavior was found to be cooperative, responsible, and calm. He did not have any apparent abnormality of his motor behavior, and his affect was mood congruent. His speech was normal and his thought process was coherent and organized. He denied suicidal and homicidal ideas. He was not found to have any hallucinations. He was alert and oriented. His insight and judgment was fair. 

In November 2014, a VAMC record showed the Veteran to have reported he was doing okay and was continuing to struggle with financial burdens. He noted his depression had been worse over the prior 2 weeks. He reported feeling like a failure being unable to provide for his family. He stated he had no major panic attacks but stated he had minor anxieties were periodic and ongoing. He noted his obsessive symptoms had returned and that he had other checking habits which he did repeatedly. He reported he was trying to finish school on-line and was going to Church regularly. He reported occasional passive thoughts of death, but had no intent or plan. He had no active self-directed or other directed violent thoughts. His mental status, eye contact, and perceptions were within normal limits and he attitude and behavior was found to be cooperative and responsible. He did not have any apparent abnormality of his motor behavior, and his affect was mood congruent. His speech was normal and his thought process was coherent and organized. He had suicidal ideas noted to be occasional passive wishes, but did not have a plan or intent. He was found to have feelings of helplessness, guilt, pessimism, self-pity, and inadequacy. He denied homicidal ideas. He was not found to have any hallucinations. He was alert and oriented. His insight and judgment was fair. His mood was nervous, dysphoric, and labile. 

In December 2014, a VAMC record found the Veteran to report a recent worsening of anxiety symptoms, stated that he isolated himself in his room because he felt “threatened” when he left his room. He reported daily panic attacks when in public due to worry that something was going to happen. He stated that he did not want to be around people and that he was mentally on edge and withdrawn. He reported that when confronted in a dispute, he will get upset, cannot breathe, and will shake. He stated that he had constant worry about multiple things. He reported hopelessness and thoughts of “what’s the sense of going on” due to his “suffering.” He reported no prior suicide attempts and stated that his family was his reason for living.

In a January 2015 VA examination, the Veteran reported he had been married 21 years and had a 20-year-old son. He described his marriage as “ok” and as a loving marriage. He reported he had a close attachment with his son and he had a good relationship with his three step-children. He reported he and his wife were raising their step-granddaughter. He denied having any close friends to whom he could confide. He reported he was unemployed and to drop out of school due to respiratory problems. He stated he looked for subsequent work driving a truck, but it was hard because he hurt his back and neck. The Veteran was alert and oriented. He was well groomed with appropriate hygiene. He described his mood as “tired, kind of anxious.” His affect was euthymic and his speech was organized. He reported that he was always anxious, that he would repeat things in his mind, and that he experienced panic attacks while in crowds. He stated that he had a depressed mood and stayed depressed the majority of the time. He denied suicidal or homicidal ideation. He was alert and fully oriented. The examiner noted that the Veteran’s examination responses were indicative of significant over reporting.

In April 2015, a VAMC record showed the Veteran to have presented with recent improvement in his mood. He stated that over the course of the past 2-3 days he noticed that he had felt less overwhelmed, less anxious, and less depressed. Prior to his, he noted he had difficulty getting out of bed and passive suicidal ideation of wishing he did not wake up. He denied suicidal intent. He was orientated to person, place, time and situation. His memory for life events was intact. No thought process abnormalities were noted. He denied an intent to harm others or himself. He denied hallucinations and had no evidence of response to internal stimuli. His affect was euthymic. He was found to be able to make informed decisions. 

In May 2015, a VAMC record showed the Veteran to be doing much better after a medication adjustment. He noted his anxiety symptoms were better and that he could cope with minor anxieties and irritabilities. He reported no major panic attacks. He reported that his obsessive symptoms were better. He stated he was trying to get back to online school. He denied self-directed or other directed violent thoughts. He reported he did not feel his financial stress the same and that his family stress had decreased. His mental status, eye contact, thought content, and perceptions were within normal limits and he attitude and behavior was found to be cooperative, responsible, and calm. He did not have any apparent abnormality of his motor behavior, and his affect was mood congruent. His speech was normal and his thought process was coherent and organized. He denied suicidal and homicidal ideas. He was not found to have any hallucinations. He was alert and oriented. His insight and judgment was fair. 

In July 2015, a VAMC record indicated the Veteran reported a worsening of his depression. He reported wanting to try a new medication. He reported ongoing issues of frustration, depression, counting habits, and feelings of helplessness with family and financial stress. He denied self-directed or other directed violent thoughts. He reported a couple of panic attacks between visits. His mental status, eye contact, and perceptions were within normal limits and he attitude and behavior was found to be cooperative, responsible, and calm. He did not have any apparent abnormality of his motor behavior, and his affect was mood congruent and found to be constricted. His speech was normal and his thought process was coherent and organized. He denied suicidal and homicidal ideas. He was not found to have any hallucinations. He was alert and oriented. His insight and judgment was fair. His mood was nervous, aloof, dysphoric, irritable, and anhedonic. His thought content was found to be helplessness with family and financial stressors. He was found to have pessimism, compulsions, chronic pain, and diminished interests.

In August 2015, a VAMC record showed the Veteran to have reported he was doing a lot better in depression. He stated he had not felt depressed lately, that he was paying attention to things he did, and was trying to go to school on-line. He reported he enjoyed music now and had no hopelessness, guilt, or anergia. He stated that his panic and anxiety episodes still came but were milder in severity and that his obsessive repeating was less and milder. He denied self-directed or other directed violent thoughts. He reported that his family life was hectic was not as stressful like before. His mental status, eye contact, thought content, and perceptions were within normal limits and he attitude and behavior was found to be cooperative, responsible, and calm. He did not have any apparent abnormality of his motor behavior, and his affect was mood congruent. His speech was normal and his thought process was coherent and organized. He denied suicidal and homicidal ideas. He was not found to have any hallucinations. He was alert and oriented. His insight and judgment was fair. His mood was noted to have anxiety attacks which were mild. He was found to have mental compulsions.

An October 2015 VAMC record showed the Veteran to have reported that he was doing better in depression. He stated he had not felt majorly depressed in the interim and was tolerating his medication change well. He noted that now and then with family issues he gets mildly depressed which did not last long. He reported that his on-line schooling was going well. He stated he enjoyed music. He stated he had no hopelessness, guilt, or anergia. He reported that his panic/anxiety episodes were “not too often” and were milder in severity. He reported using his relaxation breathing to cope. He did not have self-directed or other directed violent thoughts. His mental status, eye contact, thought content, and perceptions were within normal limits and he attitude and behavior was found to be cooperative, responsible, and calm. He did not have any apparent abnormality of his motor behavior, and his affect was mood congruent. His speech was normal and his thought process was coherent and organized. He denied suicidal and homicidal ideas. He was not found to have any hallucinations. He was alert and oriented. His insight and judgment was fair. His mood was mild anxiety attacks with brief dysphoric moods overcome with positive time management. His mental compulsions were noted to be milder.

In January 2016, a VAMC record showed the Veteran to have reported getting stressed from school and the responsibilities of family. He noted his mood was more depressed and that he was stressed about what to do after school. He stated his online schooling was going well. He stated he enjoyed music and had no hopelessness, guilt, or anergia. He noted his panic/anxiety episodes were “not that much” and that he was coping with breathing for minor symptoms. He denied self-directed and other directed violent thoughts. His mental status, eye contact, thought content, and perceptions were within normal limits and he attitude and behavior was found to be cooperative, responsible, and calm. He did not have any apparent abnormality of his motor behavior, and his affect was mood congruent. His speech was normal and his thought process was coherent and organized. He denied suicidal and homicidal ideas. He was not found to have any hallucinations. He was alert and oriented. His insight and judgment was fair. His mood was nervous and dysphoric. He was found to have feelings of helplessness and inadequacy. 

In April 2016, a VAMC record reported that the Veteran noted his interim anxiety had improved and that he was getting better at school. He noted that his family life was ok and that he enjoyed music, and had no feelings of hopelessness, guilt, or anergia. He was using his relaxation breathing to cope with minor symptoms. He did not have self-directed or other directed violent thoughts. His mental status, eye contact, thought content, and perceptions were within normal limits and he attitude and behavior was found to be cooperative, responsible, and calm. He did not have any apparent abnormality of his motor behavior, and his affect was mood congruent. His speech was normal and his thought process was coherent and organized. He denied suicidal and homicidal ideas. He was not found to have any hallucinations. He was alert and oriented. His insight and judgment was fair. His mood was nervous and dysphoric. He was found to have feelings of helplessness and inadequacy.

In September 2016, a VAMC record showed the Veteran to have reported that he could not handle the school stress and school load and that his GPA dropped and he was dismissed from school the previous June. He reported he was trying to get back again. He reported that his medication helped, but that when he gets overwhelmed by multiple tasks or under time pressure, he gets panicky and confused. He stated that lately he had been feeling more nervous and mood and more fearful. He reported his family life was okay and he had no hopelessness. He did not have self-directed or other directed violent thoughts. His mental status, eye contact, thought content, and perceptions were within normal limits and he attitude and behavior was found to be cooperative, responsible, and calm. He did not have any apparent abnormality of his motor behavior, and his affect was mood congruent. His speech was normal and his thought process was coherent and organized. He denied suicidal and homicidal ideas. He was not found to have any hallucinations. He was alert and oriented. His insight and judgment was fair. His mood was nervous and dysphoric. He was found to have feelings of helplessness, inadequacy, chronic pain, and diminished interests.

In October 2016, a VAMC record showed the Veteran to report that he was doing better with his medication adjustment. He noted his panic/anxiety was less and his mood was better. His appetite was noted as being okay. He anhedonia was mild to moderate. His family life was noted to be okay, with no hopelessness. He reported doing his relaxation breathing. He did not have self-directed or other directed violent thoughts. His mental status, eye contact, thought content, and perceptions were within normal limits and he attitude and behavior was found to be cooperative, responsible, and calm. He did not have any apparent abnormality of his motor behavior, and his affect was mood congruent. His speech was normal and his thought process was coherent and organized. He denied suicidal and homicidal ideas. He was not found to have any hallucinations. He was alert and oriented. His insight and judgment was fair. His mood was nervous and dysphoric. He was found to have feelings of helplessness and inadequacy.

In January 2017, a VAMC record showed the Veteran to have reported that he was doing okay. He stated he was less nervous now on his current medication than before and that he had no major panic attacks. He stated that his mood was non-depressed, that his appetite was okay, and he had no anhedonia or hopelessness. He reported he had difficulties in recalling what he reads at school and that he tried to overcome this by repetitions. He reported his family life was okay. He stated he had been doing is relaxation breathing. He did not have self-directed or other directed violent thoughts. His mental status, eye contact, thought content, and perceptions were within normal limits and he attitude and behavior was found to be cooperative, responsible, and calm. He did not have any apparent abnormality of his motor behavior, and his affect was mood congruent. His speech was normal and his thought process was coherent and organized. He denied suicidal and homicidal ideas. He was not found to have any hallucinations. He was alert and oriented. His insight and judgment was fair. His mood was nervous and dysphoric. He was found to have feelings of helplessness and inadequacy. He reported chronic pain.

In March 2017, the Veteran submitted a report from a private examiner. The examiner reviewed the Veteran’s claims file and summarized those records in his report. He also conducted an in-person examination of the Veteran. The examiner found that the Veteran was cooperative and appropriate with good impulse control. There was no evidence of agitation. His speech was decreased in rate, tone, and volume and very flattened without inflection. His mood was depressed and his affect was restricted to the dysthymic range. He voiced intermittent passive suicidal ideation without specific plan or intent and had no homicidal ideation. There was no evidence of auditory, visual, or tactile hallucinations. After the review of the medical record and interview with the Veteran, the private examiner stated that the Veteran had major depressive disorder, recurrent, severe, without psychotic features, with anxious distress. He also found that the Veteran had panic disorder with agoraphobia. The examiner noted that the Veteran’s depression was likely permanently and significantly worsened by his TB treatment. The examiner found that since 2003 the Veteran had severe symptoms of depression, hopelessness, despair, and persistent suicidal ideation. The examiner stated that the His speech was decreased in rate, tone, and volume and very flattened without inflection. His mood was depressed and his affect was restricted to the dysthymic range. He voiced intermittent passive suicidal ideation without specific plan or intent and had no homicidal ideation. There was no evidence of auditory, visual, or tactile hallucinations. It was the examiner’s opinion that the Veteran’s mental condition prevented the Veteran in engaging in social, occupational, educational, and other areas of functioning and caused total occupational impairment after 2003.

Considering the above, the Board finds that a rating in excess of 30 percent for the period prior to the February 10, 2014, private examination report is not warranted. In this regard, the Veteran’s depression symptoms were primarily noted to be depressed mood and anxiety. In his April 2010 VAMC treatment, he noted he had been married for 15 years and had a good relationship with his son. He denied suicidal ideation and there was no indication he had any hallucinations. He appeared appropriately groomed and oriented. Furthermore, the November 2013 VA examination found that the Veteran’s primary depressive symptoms were found to be depression, anxiety, chronic sleep impairment, and disturbances of motivation and mood. Again, it was noted the Veteran was appropriately groomed and that though he had suicidal thoughts in the past, he did not have any current thoughts. He was noted to have normal routine behavior and self-care. Thus, based on the foregoing, the Board does not find that the evidence of record supports a finding the Veteran’s depression caused symptoms more severe than those causing occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks. Specifically, his treatment prior to the February 10, 2014 private examination did not indicate that the Veteran had difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks), impaired judgment, impaired abstract thinking, current suicidal intentions, obsessional rituals which interfered with routine activities, near-continuous panic or depression affecting his ability to function, impaired impulse control (such as unprovoked irritability with periods of violence), spatial disorientation, or neglect of personal appearance and hygiene or more severe symptomatology such as to warrant at least the next higher 50 percent rating. Thus, the Veteran’s primary reported symptomology as evidenced by his treatment records and the November 2013 VA examination report was indicative of a 30 percent rating. Bowling v. Principi, 15 Vet. App. 1 (2001); Vazquez-Claudio v. Shinseki, 713 F. 3d 112 (Fed. Cir. 2013).

The evidence of record also does not support a finding that prior to February 10, 2014, the Veteran had symptoms equivalent in severity to those associated with ratings of 70 percent, which would equate to occupational and social impairment with deficiencies in most areas. The Veteran’s treatment records did not indicate that the Veteran had speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships, all of which are contemplated by a 70 percent rating. Though the Veteran did have indications of an inability to establish and maintain effective relationships outside of his family, he consistently discussed his close relationship with son and his long marriage to his wife. The Board finds, then, that the Veteran’s depressive symptomology for the period prior to February 10, 2014, was readily captured by the criteria for a 30 percent rating, which weighs against a finding that they are equivalent in severity, frequency, and duration to symptoms correlating with a higher percent rating. See 38 C.F.R. § 4.130. 

However, resolving all reasonable doubt in favor of the Veteran, the Board finds that as of the February 10, 2014 private examination, the Veteran’s depressive disorder more closely approximated occupational and social impairment with deficiencies in most areas, warranting a 70 percent rating. The February 2014 examination indicated the Veteran was suffering from symptoms of anxiety, depression, decreased appetite, poor concentration, forgetfulness, four panic attacks a day, physical symptoms of anxiety, agoraphobia, and ruminations. The examiner specifically found that the Veteran’s depressive disorder caused occupational and social impairment with deficiencies in most areas such as work, school, family relations, and mood. Furthermore, an increase in the severity of the Veteran’s depression is supported by his VAMC treatment records, which showed such worsening in his December 2014 report of increase depression and recent worsening of anxiety symptoms, isolation, daily panic attacks when in public, hopelessness, and thoughts of “what’s the sense of going on” due to his “suffering.” The Board is aware that the Veteran’s depressive symptoms were of a waxing and waning nature, as is clear from his almost monthly VAMC treatment, and finds that the overall totality of his depressive symptoms more closely approximates a 70 percent rating as of May 2, 2014.

The Board does not find, however, that the Veteran’s depression caused total social and occupational impairment at any time since the June 2008 grant of service connection. Though the Board notes that the February 2014 examination found the Veteran to have symptoms of confused thought processes, forgetfulness, memory problems, there is no indication in the February 2014 private examination that the Veteran’s depressive symptoms caused total occupational and social impairment. Indeed, neither the Veteran’s monthly VAMC treatment records nor the February 2014 examination indicated that the Veteran had gross impairment in thought processes or communication, persistent delusions or hallucinations, or persistent danger of hurting himself or others, intermittent inability to perform activities of daily living, disorientation to time or place and memory loss for names of close relatives, own occupation, or own name, all of which are indicative of a total impairment. Thus, though the February 2014 examiner may have found some severe symptomology present on the day he conducted his examination, the overall totally of the evidence does not support a finding that the Veteran’s was totally occupationally and socially impaired by his depressive disorder. Similarly, the March 2017 private examination does not warrant a finding of total social and occupational impairment. In that examination, the Veteran was cooperative and appropriate with good impulse control. There was no evidence of agitation. Though he voiced intermittent passive suicidal ideation, he had no specific plan or intent and had no homicidal ideation. There was no evidence of auditory, visual, or tactile hallucinations. Though the March 2017 examiner indicated that the Veteran needed assistance with his activities of daily living, there is no record in the Veteran’s monthly VAMC psychiatric care which supports this finding. Prior records, though, do state that the Veteran had to care for his wife as she was disabled after a car accident. The totality of the evidence of record, thus, does not otherwise show that the Veteran’s symptoms were equivalent in severity to those necessary to support a finding for total occupational and social impairment, despite the characterization of the March 2017 examiner. The Board finds, then, that the Veteran’s depressive symptomology for was readily captured by the 30 percent and 70 percent ratings assigned herein, which weighs against a finding that they are equivalent in severity, frequency, and duration to symptoms correlating with a higher percent rating. See 38 C.F.R. § 4.130. Furthermore, the Board notes that though thoughts of self-harm are contemplated by the 100 percent criteria, the evidence of record regarding the Veteran’s reported thoughts of suicide and death were intermittent and were not frequent or severe enough to contribute to total social impairment. Bankhead v. Shulkin, 29 Vet. App. 10 (2017). The record does not show that he was a danger to himself or others.

The Board finds the medical opinions contained herein adequate and highly probative both as to the Veteran’s subjective reports and the resulting objective findings. Specifically, the examiners interviewed the Veteran, reviewed his claims file, and conducted a physical examination. Moreover, the examiners had the requisite medical expertise and had sufficient facts and data on which to base their conclusions. 

In addition to the medical evidence, the Board considered the Veteran’s statements regarding his psychological symptoms. The Veteran’s statements regarding his major depressive disorder symptomology are credible and supported by the evidence. The objective clinical findings, though, outweigh his subjective assertions as to whether he has total social and occupational impairment due to his depressive disorder. 

Accordingly, the Board finds that the criteria for an initial rating in excess of 30 percent for depression for the period prior to February 10, 2014, are not met, but that the criteria for a rating of 70 percent, but no higher, for depression as of February 10, 2014, have been met. 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

New Relevant Evidence

In September 2000, the Board denied entitlement to service connection for an additional pulmonary/respiratory disorder, as secondary to his service connected TB on the basis that no such disability had been shown to be linked to the Veteran’s service connected TB. Unless the Chairman orders reconsideration, or one of the other exceptions to finality apply, all Board decisions are final on the date stamped on the face of the decision and are not subject to revision on the same factual basis. Therefore, the September 2000 Board decision is final based on the evidence then of record. 38 U.S.C. § 7104; 38 C.F.R. § 20.1100. 

In an August 2014 statement, the Veteran sought to reopen his claim for service connection for an additional pulmonary/respiratory disability (claimed as injury related to his lungs) as secondary to his service connected TB. The July 2018 rating decision on appeal denied his petition to reopen his claim. VA may reopen and review a claim that has been previously denied if new and material evidence is submitted by or on behalf of a Veteran. 38 U.S.C. § 5108; 38 C.F.R. § 3.156(a); Hodge v. West, 155 F. 3d 1356 (Fed. Cir. 1998). 

The Board must consider the question of whether new and material evidence has been received because it goes to the Board’s jurisdiction to reach the underlying claim and adjudicate the claim de novo. Jackson v. Principi, 265 F.3d 1366 (Fed. Cir. 2001); Barnett v. Brown, 83 F.3d 1380 (Fed. Cir. 1996). If the Board finds that no new and material evidence has been offered, that is where the analysis must end. Butler v. Brown, 9 Vet. App. 167 (1996).

New evidence is evidence not previously submitted to agency decision makers. Material evidence is evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a).

In determining whether new and material evidence has been received, VA must initially decide whether evidence associated with the claims file since the prior final denial is new. That analysis is undertaken by comparing newly received evidence with the evidence previously of record. After evidence is determined to be new, the next question is whether it is material.

The Board must review all evidence submitted by or on behalf of a claimant since the last final denial on any basis to determine whether a claim must be reopened. Evans v. Brown, 9 Vet. App. 273 (1996). For purposes of determining whether new evidence is material, the credibility of the new evidence is presumed. Justus v. Principi, 3 Vet. App. 510 (1992). New and material evidence is not required as to each previously unproven element of a claim. Shade v. Shinseki, 24 Vet. App. 110 (2010).

The Board notes that its task is to first decide whether new and material evidence has been received, as opposed to whether or not the evidence actually substantiates the Veteran’s claim. Pertinent evidence added to the record since the September 2000 Board decision includes a March 2017 private opinion that found that it was at least as likely as not that the Veteran’s TB was a substantial contributing factor in his COPD and that COPD was at least as likely as not caused by the Veteran’s TB. As such, evidence of a previously unestablished element of the claim has been received, and the claim will be reopened.

Service Connection

The Veteran has sought service connection for an additional pulmonary/respiratory disability (claimed as injury related to his lungs) and COPD as due to his service connected TB. 

Service connection may be established on a secondary basis for a disability which is shown to be proximately due to or the result of a service-connected disability. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either caused by or aggravated by a service-connected disability. 38 C.F.R. § 3.310(a); Allen v. Brown, 7 Vet. App. 439 (1995).

A March 2010 VAMC record showed the Veteran had a past medical history positive for COPD.

In May 2014, a VAMC record showed the Veteran had a diagnosis of mild COPD.

In January 2015, a VA examination stated that the Veteran had a diagnosis of COPD which was not proximate to or the result of TB.

In March 2017, a private examiner found that it was at least as likely as not that the Veteran’s TB was a substantial contributing factor in his COPD and that COPD was at least as likely as not caused by the Veteran’s TB. In so finding, the examiner noted the Veteran’s diagnosis of TB while in-service, his history as a life-long non-smoker, a lack of evidence of environmental factors, and a lack of evidence of genetic factors in the Veteran’s development of COPD. The examiner also noted that the January 2015 VA examiner did not make reference to the medical literature which substantiated that a history of TB is a substantial risk factor in developing COPD. The examiner stated that were it not for the development of the Veteran’s TB while in-service he would have not developed COPD.

After review of the record, and based on the foregoing, the Board finds that service connection for the Veteran’s COPD as secondary to his service connected TB is warranted. 

Secondary service connection requires a finding that that the current disability was either caused by or aggravated by a service-connected disability. In the current matter, such a connection is supported by the evidence of record. It is well documented that the Veteran was diagnosed with TB while in service and that he subsequently developed COPD. The May 2017 private examiner stated that it was more likely than not that the Veteran’s COPD was caused by his TB.

The Board finds the March 2017 private physician’s medical opinion highly probative to the issue of whether the Veteran’s COPD was caused by his TB. The physician possesses the necessary education, training, and expertise to provide the requested opinion. Grottveit v. Brown, 5 Vet. App. 91, 93 (1993). The opinion was based on a considerable review of the Veteran’s claims file and prior medical treatment. It is clear the physician took into consideration all relevant factors in giving his opinion. The Board notes that the January 2015 VA examiner did not find that the Veteran’s COPD was proximate to or the result of TB. However, the January 2015 VA examiner did not address the issue of if the Veteran’s TB aggravated the Veteran’s COPD or any of the risk factors associated with COPD or provide any discussion of the causation of the Veteran’s COPD in any fashion. Thus, the January 2015 VA examiner’s report offers no opinion on the theory of aggravation and secondary service connection and provides no probative value in regard to that analysis.

The Board also notes that seeking to obtain negative evidence against the Veteran is prohibited by VA law. See Mariano v. Principi, 17 Vet. App. 305, 312 (2003) (noting that VA may not order additional development for the sole purpose of obtaining evidence unfavorable to a claimant). Thus, the evidence of record has established that the Veteran has a current disability that is related to his service. 

Accordingly, resolving all reasonable doubt in favor of the Veteran, the Board finds that a grant of service connection for an additional pulmonary/respiratory disability (claimed as injury related to his lungs) diagnosed as COPD, as secondary to his TB, is warranted.

REASONS FOR REMAND

The issue of entitlement to a compensable rating for TB is remanded to correct a duty to assist error that occurred prior to the July 2018 rating decision on appeal. In January 2015, the Agency of Original Jurisdiction (AOJ) obtained a VA examination regarding the severity of the Veteran’s service-connected TB. However, this examination report did not adequately consider all of the Veteran’s symptomology associated with TB. Specifically, the examiner did not indicate that a current pulmonary function test (PFT) had been performed and relied on a test from January 2014. The Board finds that this information did not reflect the current severity of the Veteran’s TB at the time the January 2015 VA examination was performed. As such, the Board finds that this examination was inadequate for adjudication purposes. Additionally, in March 2017 submission by his attorney, received by VA prior to the July 2018 rating decision on appeal, the Veteran asserted that his TB had increased in severity. As stated above, prior to the July 2018 rating decision on appeal, the last VA examination regarding the Veteran’s TB was in January 2015. Therefore, the Board finds that the failure to provide the Veteran with an adequate and more contemporaneous examination is a duty to assist error. See Green v. Derwinski, 1 Vet. App. 121, 124 (1991) (VA has a duty to provide the Veteran with a thorough and contemporaneous medical examination) and Caffrey v. Brown, 6 Vet. App. 377, 381 (1994) (an examination too remote for rating purposes cannot be considered “contemporaneous”).

Additionally, the Board finds that the Veteran’s claim for TDIU is inextricably intertwined with his claim for an increase in his TB evaluation on appeal and because the TDIU issue may be affected by the assignment of the disability rating and effective date for the grant of service connection for COPD granted in this Decision herein. The appropriate remedy where a pending claim is inextricably intertwined with a claim currently on appeal is to remand the claim on appeal pending the adjudication of the inextricably intertwined claim. Harris v. Derwinski, 1 Vet. App. 180 (1991). Thus, adjudication of the TDIU claim will be held in abeyance pending the assignment of a disability rating and effective date for COPD and for completion of the development ordered herein.

The matters are REMANDED for the following action:

(Continued on the next page)

 

1. Schedule the Veteran for a VA examination to determine the nature and severity of his service-connected pulmonary TB. The claims file must be made available to the examiner for review in connection with the examination, and it should be confirmed that such records were available for review. All necessary tests and studies should be accomplished, specifically pulmonary function and post-bronchodilator tests should be undertaken. Complaints and clinical manifestations should be reported in detail. The examination report must include a complete rationale for all opinions expressed. 

The results of FEV-1, FEV-1/FVC, and DLCO (SB) must be specifically reported, and if unobtainable, the reason such results are unobtainable should be explained.

 

LESLEY A. REIN

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD A. Parrish, Associate Counsel